STATE OF LOUISIANA IN      *      NO. 2019-CA-0931
THE INTEREST OF M.B.

                                 *      COURT OF APPEAL

                                 *      FOURTH CIRCUIT

                                 *      STATE OF LOUISIANA

                      * * * * * * *

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2018-331-03-DQ-E, SECTION "E"
HONORABLE DESIREE COOK-CALVIN, JUDGE
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Terri F. Love, Judge Daniel L. Dysart, Judge Paula A. Brown)

BROWN, J., CONCURS IN THE RESULT

Leon A. Cannizzaro, Jr.
DISTRICT ATTORNEY
Donna Andrieu
CHIEF OF APPEALS
Scott G. Vincent
ASSISTANT DISTRICT ATTORNEY
PARISH OF ORLEANS
619 S. White Street
New Orleans, LA 70119
     COUNSEL FOR APPELLEE/STATE OF LOUISIANA

Tenee Felix
Louisiana Center for Children's Rights
1100-B Milton Street
New Orleans, LA 70122
     COUNSEL FOR APPELLANT/M.B.

**ADJUDICATION AFFIRMED; DISPOSITION
VACATED; REMANDED FOR RESENTENCING**

**FEBRUARY 12, 2020**

M.B. was charged on November 27, 2018, with one count of simple burglary, a violation of La. R.S. 14:62; one count of illegal possession of a handgun by a juvenile, a violation of La. R.S. 14:95.8; and, one count of illegal possession of stolen firearms, a violation of La. R.S. 14:69.1. The trial court adjudicated M.B. delinquent on the two firearms charges, and found him not guilty on the charge of burglary. The disposition judgment signed on August 23, 2019, however, indicates that the trial court sentenced M.B. on only one firearm charge, violation of La. R.S. 14.69.1, and on the charge of burglary, a violation of La. R.S. 14:62. As discussed in greater detail below, we affirm the adjudication of delinquency, vacate the judgment of disposition, and remand for resentencing.

**BACKGROUND:**

On November 25, 2018, M.B. was arrested. The facts leading up to and including the arrest were testified to at the adjudication hearing on July 17, 2019.

Lt. Antione Ferbos of the Harbor Police Port of New Orleans testified that as he was driving to work on November 25, 2018, he saw a vehicle parked partially in

the street and observed people engaged in an altercation on the sidewalk. An older man was on top of a young man, and a woman was nearby attempting to help the older man restrain the young one. As Lt. Ferbos approached, the older man reached back and handed him a handgun, which he placed in his vehicle. He spoke with the two older people and learned that they were the parents of the young man. He placed the young man in handcuffs and put him in his vehicle. Lt. Ferbos flagged down two NOPD officers who were working a detail across the street at the Saengar Theatre and they called in the incident to NOPD. After NOPD officers arrived, Lt. Ferbos transferred custody of the young man to them, and turned over the weapon.

The State called NOPD Officer Deserie Broussard. She testified that on November 25, she was on duty at the Eighth District Police Station, which is located in the French Quarter. Two Louisiana State Troopers entered the precinct with a man who claimed to be the victim of car burglary in a parking garage on Iberville Street. The victim reported that a gun and cash were stolen from his vehicle. Later that day, Officer Broussard was dispatched to the corner of N. Rampart and Canal streets to transport a juvenile who was being detained at that location.[1] Upon arriving at the scene, Officer Broussard noted that the gun that had just recently been described to her by the victim of the burglary appeared to be the weapon taken from the juvenile.

---

[1] Off. Broussard stated that the parking garage was "two blocks over and one block up" from where M.B. was apprehended.

Det. Miles Guirreri of the NOPD, who was a patrolman at the time of this incident, testified that he was one of the officers dispatched to the scene at Canal and Rampart on November 25. When he and his partner arrived, they met with M.B.'s parents, and took custody of M.B. and the gun. Det. Guirreri testified that while he was investigating this situation, he learned of a car burglary that had recently taken place in the Eighth District, and that a gun was stolen in the burglary. He called the officer who was investigating the burglary and requested that the victim be brought to the scene. The victim positively identified the weapon as his (the victim had previously told the investigating officers of a unique mark on the gun). After the victim identified the gun as his, it was returned to him.

Yvette Williams, M.B.'s mother, testified that on November 25, 2018, she was at home cooking and preparing to celebrate the birthday of one of her other children. Ms. Williams testified that she asked M.B.'s father to accompany her to find M.B. so he could be at home to celebrate with his family. They went to an unknown location on Bourbon Street, which Ms. Williams described as M.B.'s "usual spot," but did not see him. They continued up and down Canal Street and finally located M.B. at the corner of Canal and N. Rampart streets. As soon as M.B. saw the car pull up, he ran. Ms. Williams said her husband got out and chased M.B., tackling him not far from the site. She got into an altercation with an older black man whom she described as the man M.B. was "hanging out with."

Ms. Williams testified that as M.B. was fighting with his father on the ground, she saw a gun fall out of M.B.'s pants. Her husband picked up the gun and handed it to an officer who had arrived on the scene.[2]

**PROCEDURAL HISTORY:**

M.B. was charged on November 27, 2018, and on December 5, 2018, he appeared and answered not guilty to the charges. The court, sitting *ad hoc*, set the adjudication hearing for January 7, 2019, to which defense counsel objected.

On December 18, 2018, counsel for M.B filed a Motion for Pre-Trial Discovery, a Bill of Particulars and for a production of the transcript of the continued custody hearing. The court granted the motions and ordered the State to respond by January 3, 2019.

On January 7, 2019, the State moved for a continuance as none of the witnesses it had subpoenaed for trial were served. The court granted the continuance and reset the adjudication hearing for April 3, 2019. The court also ordered that M.B. be released to his parents.

Counsel for M.B. moved for a continuance on April 3, 2019, and waived all La. Ch.C. art. 877 deadlines. The trial was continued to July 17, 2019.

On that date, the court adjudicated him delinquent on the count of illegal possession of a handgun by a juvenile and one count of illegal possession of stolen firearms. The court did not find M.B. delinquent as to the burglary charge, finding that the State had not carried its burden of proof. The judgment, signed by the trial

_____

[2] Ms. Williams apparently mistook the Harbor Police officer for a Louisiana State Trooper.

4

court on July 19, correctly sets forth a finding of not guilty for the burglary, and guilty on the two weapons charges.

The transcript of the disposition hearing indicates that there was some confusion as to the charges against M.B., and of which one the court had adjudicated him not guilty. The following colloquy ensued:

> THE COURT: I'm recommending a nonsecure placement, and that will be for two years. One year is going to be suspended. I'm going to give you credit for time served, and I will set this for a review in 60 days.
> MS. FELIX: I would like for him, please, Judge, to be placed as close to New Orleans as possible so that I can visit him. Myself, and the rest of his team and his mother.
> THE COURT: Okay, OJJ is to recommend a placement that is close enough to home so that his mom can visit.
> MS. FELIX: But not Bridge City.
> THE COURT: Well, it's nonsecure. I'm recommending nonsecure [sic] because of his age. [M.B.], what I want you to understand is you're going to be placed at this nonsecure [sic] facility. Ms. Felix is already going to explain to you in more detail, but his is as to count one which is the Simple Burglary.
> MS. FELIX: No, Judge. It's count three.
> THE COURT: Okay, so count one I found him not guilty, is that correct?
> MS. FELIX: Yes, Your Honor.
> THE COURT: Alright. So as to count two, which is the illegal possession of a handgun, let me go back.
> MS. FELIX: Well, he can't be placed in custody on that because it's a misdemeanor, and he was 12 years old at the time of the commission of the offense.
> THE COURT: Okay, so that's why I'm correcting it. I want to correct what I said, so let me correct it.
> MS. FELIX: Okay, sorry.
> THE COURT: Okay, we are going to vacate the order that I just put in place, and we are going to start over for clarification.
> So as to count one, we had already found not guilty.
> As to count two of the petition, which is Illegal Possession of a Handgun by a Juvenile, I'm going to place the juvenile on one year of active probation. This sentence is to run concurrent with all other counts and sentences, and the youth is to be given credit for time served.
> As to count three of the petition, which is Simple Burglary, I am sentencing the youth to two years in the custody of OJJ, which one

year is going to be suspended. The sentence is to run concurrent with all other counts and sentences, and the youth is to be given credit for time served. The Court is recommending placement in a nonsecure [sic] facility near New Orleans so that the youth's family may visit him.

The subsequent disposition Judgment rendered on August 14, 2019, and signed on August 23, 2019, reflects that M.B. was sentenced to probation for count two, illegal possession of a handgun by a juvenile, and to two years, one suspended, on count three, simple burglary.

Counsel timely moved for an appeal, designation of record and appointment of appellate counsel.

**DISCUSSION:**

In his third assignment of error, M.B. argues that the trial court erred in finding there was sufficient evidence introduced to sustain an adjudication on the charge of illegal possession of a stolen firearm. When the sufficiency of the evidence to convict is raised as error on appeal, it is well settled that the reviewing court should first review the record to determine the sufficiency of the evidence. *See State v. Miner,* 14-0939, p. 5 (La.App. 4 Cir. 3/11/15), 163 So.3d 132, 135.

In order to adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the child committed the delinquent act alleged in the petition. La. Ch.C. art 883. The standard for the State's burden of proof in a juvenile delinquency proceeding is "no less strenuous then the standard of proof required in a criminal proceeding against an adult." *State in the Interest of T.C.*, 09-1669, p. 2 (La.App. 4 Cir. 2/16/11), 60 So.3d 1260, 1262, (citing *State in the Interest of A.G.,* 630 So.2d 909, 910 (La.App. 4th Cir. 12/30/93)). "As a court of review, we grant great deference to the juvenile court's factual findings, credibility determinations,

and assessment of witness testimony." *State in the Interest of T.C., supra,* citing *State ex rel. W.B.*, 08-1458, p. 1 (La.App. 4 Cir. 4/22/09), 11 So3d 60, 61.

In a juvenile delinquency proceeding, as is a criminal case, the prosecution has the burden of proving every element of the offense beyond a reasonable doubt. La. Ch.C. art. 883. The relevant inquiry for a reviewing court is set forth in *Jackson v. Virginia,* 443 U.S. 307, 319; 99 S.Ct. 2781, 2789:

> ...the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. (emphasis in original; internal quotations omitted.)

When analyzing circumstantial evidence, La. R.S. 15:438 provides, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." Further, the Louisiana Supreme Court in *State v. Hearold,* has held that the sufficiency of the evidence review includes admissible and inadmissible evidence:

> [W]hen the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient.

7

603 So.2d 731, 734 (La. 1992)(internal citations omitted). Last, La. Const. art. V, §10 B mandates that an appellate court review both law and facts when reviewing juvenile delinquency adjudications. Thus, as in civil cases, a factual finding by the trial court may not be disturbed unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong. *See State in the Interest of Batiste,* 367 So. 2d 784 (La. 1979); *State in the Interest of T.C.,* 09-1669, p. 3, 60 So.3d at 1262.

Louisiana Revised Statute 14:69.1 A(1) provides: "Illegal possession of stolen firearms is the intentional possessing, procuring, receiving, or concealing of a firearm which has been the subject of any form of misappropriation." La. R.S. 14:69.1 A(2) provides that: "It shall be an affirmative defense to a prosecution for a violation of this Section that the offender had no knowledge that the firearm was the subject of any form of misappropriation."

M.B. argues that the testimony offered at trial, even if accepted as true, does not reasonably permit a finding of guilty because there was no credible evidence to indicate that M.B. was in possession of a firearm which had been the subject of any form of misappropriation, or that M.B. knew or should have known that the firearm was the subject of a misappropriation.

Specifically, M.B. argues that the State did not present any corroborating evidence to prove that the gun was stolen such as the testimony of the victim of the burglary. There was no testimony as to the appearance of the weapon, or whether it had any unique characteristics that would help in its identification. There was no physical evidence to prove that the weapon in M.B.'s possession was the same weapon stolen in the burglary.

8

We disagree. M.B.'s mother, Yvette Williams, testified that she saw a gun fall out of M.B.'s pants as he struggled with his father on the sidewalk. She stated that her husband picked up the gun and subsequently handed it to the first officer on the scene, Lt. Ferbos. Lt. Ferbos testified that M.B.'s father handed the gun to him, which he placed in his police unit. Det. Guirreri was next on the scene. After some preliminary discussions with Lt. Ferbos, he took possession of the gun. He also had knowledge of a recent car burglary in close proximity to this scene and was aware that a gun had been stolen. He called the officers who were investigating the burglary, and one of them came to the scene with the burglary victim. The victim positively identified the gun and it was returned to him.

This Court, after reviewing all of the evidence presented, finds it sufficient to support the trial court's conviction of illegal possession of a stolen firearm.

In his first assignment of error, M.B. argues that the trial court abused its discretion in setting the adjudication hearing for him beyond the deadline established in La. Ch.C. art. 877.

Louisiana Children's Code art. 877 provides:

> A. When the child is charged with a crime of violence as defined in R.S. 14:2(B) and the child is continued in custody pursuant to Chapter 5 of this Title, the adjudication hearing shall commence within sixty days of the appearance to answer the petition. In all other cases, if the child is continued in custody pursuant to Chapter 5 of this Title, the adjudication hearing shall commence within thirty days of the appearance to answer the petition.
> B. If the child is not continued in custody, the adjudication hearing shall commence within ninety days of the appearance to answer the petition.
> C. If the hearing has not been commenced timely, upon motion of the child, the court shall release a child continued in custody and shall dismiss the petition.
> D. For good cause, the court may extend such period.

9

M.B., who was in custody, appeared and answered the petition on December 5, 2018. Thus, according to La. Ch.C. art. 877 A, the adjudication hearing should have been held no later than Friday, January 4, 2019, absent good cause to set it beyond the deadline.

However, the court, sitting *ad hoc,* found good cause to extend the deadline by three days to January 7, 2019. La. Ch.C. art. 877 D. The court noted that it considered the intervening holidays and that there was no docket set in that section of court for January 4. The defense noted its objection.

M.B. argues that La. Ch.C. art. 877 was enacted by the legislature to prevent "excessive delays" in adjudicating juvenile matters. He acknowledges that the deadlines can be extended, but only for good cause. M.B. argues that the Louisiana Supreme Court has held that the "court system cannot excuse itself from affording an accused a trial within the delay required by law, simply by relying upon internal operating procedures which result in noncompliance with the statutory mandate." *State v. Driever,* 347 So.2d 1132 (La. 1977).

What constitutes good cause, i.e., legally sufficient reasons, for dismissal of a juvenile delinquency matter must be determined on a case-by-case basis and must be fully supported by the record. *State in the Interest of R.W.,* 16-1187, p. 6 (La.App. 4 Cir. 3/2/17), 213 So.3d 13, 17, (citing *State ex rel. S.R.,* 08-0785, p. 4 (La.App. 4 Cir. 10/8/08), 995 So.2d 63, 66)). A trial court is vested with broad discretion in determining good cause to continue a delinquency adjudication hearing outside the statutory time limits. *State in the Interest of T.W.*, 13-1564, p. 6 (La.App. 4 Cir. 5/14/14), 141 So.3d 822, 827 (citing *State in the Interest of R.G.,* 06-1625 (La.App. 4 Cir. 7/18/07), 963 So.2d 475, 477)).

We find no abuse of discretion by the trial in extending the hearing date by three days, especially considering that the trial court was sitting *ad hoc* and there was no docket set for January 4, 2019. As noted by M.B., the legislature desire to prevent "excessive delays" in enacting La. Ch.C. art. 877. A three day extension is not excessive.[3]

Last, M.B. argues that the trial court erred in admitting hearsay in violation of the Louisiana Code of Evidence and M.B.'s Sixth Amendment Right to Confrontation.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered into evidence to prove the truth of the matter asserted. La. Code Evid. art. 801 C. A police officer's testimony may include information provided by another individual without constituting hearsay only when it is offered to explain the course of the investigation or the officer's actions. *State v. Randolph*, 16-0892, p. 12 (La.App. 4 Cir. 5/3/17), 219 So.3d 425, 434. The erroneous admission of evidence is subject to the harmless error analysis. *State v. Campbell,* 15-0017, p 27 (La.App. 4 Cir. 6/24/15), 171 So.3d 1176, 1192. Harmless error exists when the guilty verdict actually rendered was "surely unattributable" to the error. *State v. Higginbotham*, 11-0564, p. 3 (La. 5/6/11), 60 So.3d 621, 623.

M.B. argues that the testimony offered by Officers Broussard and Guirreri was clearly hearsay, as they testified as to the statements made by a third party and was offered to prove the truth of the matter asserted. He further argues that the

---

[3] We also note that defense counsel did not seek the supervisory jurisdiction of this Court on the interlocutory ruling setting the trial date. M.B. also moved to continue an April 3, 2019 setting, and waived all La. Ch.C. art. 877 deadlines.

testimony was not intended to explain the course of the investigation. We disagree.

In *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. (2006), the Supreme Court distinguished between statements made during emergency situations, e.g., a 911 call, and those made while being interrogated. The Court concluded that statements made during emergency situations were not testimonial in nature, and therefore, the Confrontation Clause of the Sixth Amendment did not apply. Here, the statements made by the victim to Officer Broussard when given were not related to the incident with M.B. in any way. The victim was reporting a crime and Officer Broussard was recording the facts surrounding that incident.

M.B. states that Officer Broussard's testimony was not intended to explain the investigation because her testimony consisted of assertions made by the victim after M.B. was in custody. The transcript reveals that Officer Broussard testified that the victim came to the precinct to report a car burglary and she was the officer who prepared the report. At this point, Officer Broussard had no knowledge of M.B.'s arrest.

Det. Guirreri stated that he was aware of a recent car burglary in the area, more than likely because he was dispatched from the Eighth District after the car burglary was reported. He testified that he called the precinct to have the victim brought to the scene to possibly identify the gun. Officer Broussard did not testify that she was the person who transported the victim; rather, she was dispatched to transport M.B. to juvenile detention. She testified that after arriving at the scene and seeing the weapon, she noted the weapon was similar to the one the victim had described as stolen. It was a different officer, Officer Scullins, who actually transported the victim to the scene. Once there, Det. Guirreri personally witnessed

12

the victim positively identify the gun as his property. There is no other explanation for the police officers to have returned the gun to the victim. The information that Det. Guirreri had as to the earlier car burglary was useful information that aided in the investigation.

Additionally, any reference made by Det. Guirreri to information he learned from a third party was rendered harmless by the identification of the gun by the victim at the scene. *See State v. Randolph*, 16-0892, p. 11 (La.App. 4 Cir. 5/3/17), 219 So.3d 425, 433.

**ERROR PATENT:**

The judgment rendered following the disposition hearing incorrectly sentences M.B. for the crime of simple burglary, a crime for which he was adjudicated not delinquent. Counsel for M.B. acknowledges that the sentence of two years on the charge of simple burglary was in error. We find that the record must be corrected. Therefore, we vacate the disposition judgment rendered on August 14, 2019, and signed August 23, 2019; and remand this matter to the trial court for resentencing on the charges of which he was adjudicated guilty. Further, all records filed into this record subsequent to the disposition shall also be corrected to reflect the correct charges for which M.B. was adjudicated delinquent.

**CONCLUSION:**

We affirm the adjudication as to illegal possession of a stolen firearm and illegal possession of a handgun by a juvenile. We vacate the disposition judgment, and remand this matter for resentencing on the correct charges.

**ADJUDICATION AFFIRMED; DISPOSITION
VACATED; REMANDED FOR RESENTENCING**